D. O. B. Properties, Inc. *vs.* Bureau of Licenses of the City of Providence *et al.*

JULY 24, 1959.

Present: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

24

POWERS, J. This is a petition for a writ of certiorari to review the action of the bureau of licenses of the city of Providence in denying the petitioner's application for a license to operate a junk shop on property owned by it in said city. We ordered the writ to issue and pursuant thereto all pertinent records have been certified to this court.

It appears therefrom that on January 19, 1956 Anthony DiOrio and his brother Pasco DiOrio purchased a large parcel of real estate located on Manton avenue. The property consisted of approximately 250,000 square feet of land together with certain old mill buildings and other improvements. On March 25, 1957 D. O. B. Properties, Inc. was incorporated under the laws of this state, and on April 8, 1957 Anthony and Pasco DiOrio conveyed the property to petitioner and each received therefor fifty shares of stock in the corporation.

Thereafter on March 6, 1958 Anthony and Pasco as individuals filed an application for a license to operate a junk business on plat 80, lot 56, in compliance with the provisions of general laws 1956, §5-21-1, and chapter 18, section 1, of the revised ordinances of 1956. Lot 56 was part of the property and consisted of 185,722 square feet of land with

certain buildings thereon. After a hearing on April 28, 1958 the application was denied by the bureau of licenses in accordance with the requirements of §5-21-2, because of legal remonstrances by the owners or occupants of the greater part of the land within 200 feet of lot 56.

Subsequently, on July 18, 1958, petitioner conveyed to Anthony and Pasco DiOrio all of the property with the exception of a portion located approximately in the middle of lot 56. The portion retained by petitioner consisted of an area of approximately 30,000 square feet of land with certain buildings thereon. Thereafter on July 25, 1958 petitioner filed an application with the bureau of licenses for a license to conduct a junk business only on that portion of the property which petitioner had retained. The portion so retained was described in the petition for certiorari as "a portion of Lot 56, Plat 80 at the rear of 999 Manton Avenue in said City, County and State and more particularly described in a plat plan filed with the said Bureau of Licenses." It appears from the record that the area for which a license was sought consists of a portion confined to two small buildings on the land which contains approximately 30,000 square feet. It also appears that measuring the 200-foot radius lines from that portion would result in excluding as remonstrants under §5-21-2 substantially all of the persons whose property abutted lot 56 and who had previously filed remonstrances against the granting of a license for the whole of lot 56.

In this proceeding we are concerned only with petitioner's application for a license to operate such business on the 30,000 square foot area. It appears that such area is located in an M-1 general industrial zone. It is undisputed that the uses permitted thereunder include a junk shop and junk yard if a license therefor is obtained from the bureau of licenses in accordance with the requirements of the pertinent city ordinance.

Hearings on such application were held on October 17 and December 12, 1958. Objections were filed by substantially the same persons who had previously objected to the granting of a junk license to Anthony and Pasco DiOrio for the entire area of lot 56. However, in so far as the portion of land for which petitioner sought the license now in question, most of the objectors did not own or occupy land within 200 feet thereof. In fact the greater part of the land within 200 feet thereof was owned by Anthony and Pasco DiOrio, the sole stockholders of petitioner. They naturally did not object to the granting of the license. Anthony DiOrio testified that at a stockholders' meeting held on July 21, 1958 petitioner's charter was amended to permit it to deal in scrap metal and junk; that petitioner conveyed a part of lot 56 to the DiOrio brothers for tax purposes and financial reasons; and that they would use the property so conveyed for "warehousing and conducting a radiator business."

On January 9, 1959 the bureau filed a decision denying the application. It based such decision substantially on the grounds that it would not be in the public interest to grant a junk license for this location because of the existence of numerous residences surrounding the lot in question; that the possibility existed that the land which had been conveyed to Anthony and Pasco and which was outside the area for which a license was sought might be unlawfully used for the junk business; and finally that the instant application was substantially the same as that previously filed and denied because of legal remonstrances.

In its decision the bureau observed that "Counsel for the objectors presented a remonstrance consisting of six sheets of signatures and addresses of persons who were objecting to the granting of the application." However, it is undisputed that the owners or occupants of the greater part of the land within 200 feet of the building for which the license was sought did not object to the granting of such

license. It appears that the bureau based its decision on its findings that the instant application was an effort on the part of Anthony and Pasco DiOrio to circumvent the existence of a legal remonstrance against the granting of a junk license for the whole of lot 56.

In our opinion the grounds on which the bureau based its decision are not valid and legally sufficient to sustain such decision. Section 1 of chap. 18 of the pertinent city ordinance provides in substance that no person shall engage in the junk business "unless such person shall be duly licensed by the bureau of police and fire." Although petitioner has not attacked the validity of either the state enabling act or the city ordinance, it is well settled that a landowner is entitled to the beneficial use of his land for any lawful purpose, subject to reasonable regulation by the city in the exercise of the police power. *Tillotson* v. *City Council,* 61 R. I. 293, 295; *Holgate* v. *Zoning Board of Review,* 74 R. I. 333, 336.

It is undoubtedly true that the bureau is vested with broad powers by the state enabling act and the pertinent city ordinance. However, it is equally well established that such power cannot be unlimited if it is to withstand possible attack on the ground of unconstitutionality. See *Sundlun* v. *Zoning Board of Review,* 50 R. I. 108, 114, and *Tillotson* v. *City Council, supra,* at page 295.

In our opinion the bureau's conclusion that "because of the existence of numerous residences surrounding the lot in question that it would not be in the public interest to grant a junk license for this location" is not supported by the evidence. We are not concerned in this proceeding with lot 56 and it is clear from the evidence that the portion of such lot for which petitioner seeks the license is not surrounded by numerous residences. The petitioner violated no law in conveying a part of its property to two of its stockholders and in retaining the 30,000 square foot area

for its own use, even if it did so merely for the purpose of isolating itself from the provisions of §5-21-2.

Moreover, it is our opinion that the bureau erred in finding "that substantially the same parties had applied for a permit on the whole of lot 56, Plat 80 on March 6, 1958" and "that the application by D. O. B. Properties, Inc. filed on July 25, 1958 for a portion of Plat 80, Lot 56 is substantially the same application which was filed previously and which was denied because of a legal remonstrance." Such findings are not supported by the evidence. The applications differed both with respect to the parties and the location. We are also of the opinion that the bureau exceeded its authority in basing its decision in part on the ground that possibly "the land outside of the area for which a license is sought was to be used for the junk business."

We have carefully examined the record with respect to the bureau's finding that one of petitioner's officers was evasive when asked what was intended to be done with the property which had been conveyed by petitioner to him and his brother. It appears from the record that said witness stated that the land in question would be used for "warehousing and conducting a radiator business." In the absence of evidence that such uses were unlawful, we feel that his testimony was direct, responsive and to the point. It is clear therefore that the bureau's finding is not supported by the evidence.

We find nothing in the pertinent statute or ordinance which either expressly or by inference vests power in the bureau to deny the petitioner's application for the reasons advanced by it. Since the record is barren of any other legal grounds in support of such decision, it is our opinion that the bureau exceeded its jurisdiction and therefore its decision cannot stand. See *Mc. and S. Realty, Inc.* v. *City Council,* 88 R. I. 138, 142, 144 A.2d 112, 114.

The petition for certiorari is granted and the decision of the respondent bureau of licenses is quashed. The record

as thus quashed will leave the petitioner's application pending before the bureau to be considered by it de novo in accordance with this opinion. The records in the case which have been certified to this court are ordered sent back to the bureau with our decision endorsed thereon.

*Grande & Grande, William G. Grande, Corinne P. Grande,* for petitioner.

*William E. McCabe,* City Solicitor, *Harry Goldstein,* Assistant City Solicitor, for respondents.

*James H. Kiernan,* Intervenor.